## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EAST MARK INTERNATIONAL, LTD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 13-cv-1204-HB |
| | ) | |
| ADAR, LLC, | ) | |
| d/b/a THE LINCOLN ON LOCUST, L.P. | ) | |
| | ) | |
| Defendant. | ) | |

### MOTION OF BENZION S. FAIBISH AND YEHUDA OLEWSKI
### FOR A TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION PURSUANT TO F.R.Civ.P. 65(a)&(b)

Benzion S. Faibish, a/k/a Sam Faibish ("Faibish"), and Yehuda Olewski ("Olewski" and together with Faibish "Movants") hereby move this Honorable Court for a Temporary Restraining Order and Preliminary Injunction for the reasons set forth below.

### BACKGROUND AND BASIS FOR INJUNCTIVE RELIEF

1. Movants are plaintiffs in an ongoing action regarding the ownership of defendants Adar, LLC, ("Adar") and The Lincoln on Locust, L.P., ("Lincoln" and collectively with Adar, the "Defendants"), that is currently subject to arbitration by agreement in a *Bet Din* (Jewish Rabbinical Court), wherein the Defendants, Jacob Ungar ("Ungar") and Andre Engel ("Engel") are the named defendants (the "Arbitration Proceeding").[1]

2. Lincoln is the owner of certain real property located at 1222-26 Locust Street, Philadelphia, Pennsylvania, (the "Premises"), formerly an apartment building that was going to be developed into condominiums by Lincoln, but subsequently was destroyed by

---

[1] A true, correct and complete copy of the Arbitration Agreement between Movants, Defendants, Ungar and Engel dated September 5, 2011, is attached hereto as Exhibit 1 and incorporated herein.

fire and has never been developed.[2] The Premises was acquired by Lincoln on November 7, 2005, for the sum of $7,000,000.00.[3]

3.  The matters now the subject of the Arbitration Proceeding were the subject of a lawsuit brought in the Philadelphia Court of Common Pleas on December 24, 2009, styled *Benzion Faibish, a/k/a Sam Faibish and Yehuda Olewski v. The Lincoln on Locust, L.P., Adar, LLC, Andre Engel and Jacob Ungar*, No. 0912-02801 (the "Philadelphia Action").[4] After engaging in discovery and holding an initial trial hearing on May 14, 2010, in the Philadelphia Action, the parties agreed to transfer the matter to the Arbitration Proceeding.[5]

4.  Subsequent to the transfer of the dispute from the Philadelphia Action to the Arbitration Proceeding, the Philadelphia Action was voluntarily dismissed by Movants without prejudice on June 18, 2010.[6]

5.  The essence of the Philadelphia Action and Arbitration Proceeding is that Ungar and Engel, fraudulently and through subterfuge deprived Movants of their ownership interests

---

[2] The fire damage resulted in a complete loss of the building and was the subject of an insurance claim and multiple related litigations that has netted Lincoln with proceeds in excess of $12,250,000.00, of which approximately $8,000,000.00 was used to pay off in full the only existing mortgage liability secured by the Premises and owed to Marathon Structured Finance (*see* the mortgage satisfaction piece filed with the Philadelphia Recorder of Deeds on August 7, 2008 attached hereto as Exhibit 2 and incorporated), with the majority of the balance of the funds (approximately $4,150,000.00) going directly to Lincoln. The insurance disbursement ledger as of June 30, 2009, from Travelers Insurance Company is attached hereto as Exhibit 3 and incorporated herein. Defendants have never rebuilt the burnt out structure.

[3] See property report from the Philadelphia Office of Property Assessment attached hereto as Exhibit 4 and incorporated herein.

[4] A true, correct and complete copy (excepting only the exhibits thereto of which the relevant ones are identified *infra* and attached hereto separately) of the First Amended Complaint in the Philadelphia Action dated March 29, 2010, is attached hereto as Exhibit 5 and incorporated herein. A Second Amended Complaint was filed in the Philadelphia Action naming additional defendants, Pratpal Bagga and Khushvinder Bagga h/w, both of whom were involved in the transactions that form the basis of the Movant's claims against Defendants, Ungar and Engel, but are not parties to the Arbitration Proceeding.

[5] Movants, Ungar and Engel are all Chasidic Orthodox Jews who are bound by religious tenets to resolve their disputes through the *Bet Din*. Prior to the commencement of the Philadelphia Action, the Movants attempted to raise their dispute in the *Bet Din*, but Ungar and Engel failed respond to the Rabbinical Court's summonses, thereby necessitating the Philadelphia Action be instituted. *See* Deposition of Andre Engel dated April 13, 2010 taken in the Philadelphia Action and attached hereto as Exhibit 6 and incorporated herein, at p. 28, l. 6 through p. 32, l. 7, and the Affidavit of Benzion Faibish attached hereto as Exhibit 7 and incorporated herein.

[6] A true and correct copy of the docket from the Philadelphia Action is attached hereto as Exhibit 8 and incorporated herein.

in the Defendants, as more particularly set forth in the First Amended Complaint. [7]

Movants, through the evidence established in the Philadelphia Action have amply

demonstrated that, through the direct actions of Ungar, Ungar and Engel deprived them

of their entitlement to a 42.5% ownership interest in Lincoln.[8]

6. After the voluntary dismissal and despite Defendants', Ungar's and Engel's promise to

submit to the *Bet Din*, Movant's were unable to obtain the Arbitration Agreement from

them until September 5, 2011.

7. In the interim, and without Movant's knowledge, Ungar caused the Plaintiff in the within

action, then known as Kingsley Developments Inc., to be formed as an incorporation of

The Republic of The Marshall Islands on or about January 28, 2011. Then, on July 27,

2011, again at Ungar's direction, an amendment to the Articles of Incorporation of

Kingsley was filed such that the entities name would thereafter be East Mark

International, Ltd. [9] *See* Exhibit 14.

8. Thereafter, at Ungar's direction and with his signature as the representative of

Defendants, a fraudulent "Note" dated July 28, 2011 in the amount of $3,600,000.00 (the

"Fraudulent Loan") was executed by Adar and Lincoln (*see* Exhibit A to Plaintiff's

Complaint), as well as a fraudulent "Loan Agreement" even dated therewith (*see* Exhibit

B to Plaintiff's Complaint)  and the fraudulent Mortgage securing the loan by the

Premises (attached to Plaintiff's Complaint as Exhibit C and filed with the Office of the

---

[7] The Court is referred to Exhibit 5, where the rather complex details of the underlying transaction and Movant's claims against the Defendants, Ungar and Engel are set forth in detail.

[8] *See, e.g.,* The Hebrew handwritten summary of the terms of the arrangement between Ungar, Faibish and Olewski prepared by Ungar (originally attached to the First Amended Complaint as its Exhibit A) and the certified English translation thereof (originally attached to the First Amended Complaint as its Exhibit B), which are attached hereto collectively as Exhibit 9 and incorporated herein. *See, also,* the sworn Declarations of Khushvinder Bagga and Pratpal Bagga, both dated August 24, 2009, which are attached hereto collectively as Exhibit 10 and incorporated herein, and the notes of testimony from the May 14, 2010 trial proceedings in the Philadelphia Action attached hereto as Exhibit 11 and made a part hereof.

[9] The formational and amendatory certificates of Plaintiff are attached hereto as Exhibit 12 and incorporated herein.

Recorder of Deeds of Philadelphia on August 30, 2011) (all collectively the "Fraudulent

Loan Documents"), which are the basis for the within confession of judgment action

purporting to establish a loan made by Plaintiff to Defendants in the amount of

$3,600,000.00 as claimed in Plaintiff's complaint.

9.    At no time was any consideration, monetary or otherwise, exchanged by East Mark

International, Ltd., to Defendants to justify the Fraudulent Loan Documents and lien

placed against the Premises.[10]

10.  To the contrary, the loan is a fraud and a sham perpetrated by Ungar and Engel in order

to deprive Movants of their legal and equitable rights and in claims in and to the

Defendants and the value of the Premises and the fire insurance proceeds related to the

Premises received by Defendants and converted by Ungar and Engel to their own benefit

and to Movant's great detriment.

11.  Moreover, the Fraudulent Loan was found By Rabbi Gobioff in his June 6, 2013 order

(*see* Exhibit 14) to be in direct contravention of the injunction order entered by the *Bet*

*Din* on July 30, 2012, which states:[11]

---

[10] See Faibish Affidavit at Exhibit 7.
[11] A true and correct copy of the Interim Rabbinical Court Ruling and Injunction dated July 30, 2012, as filed with the Philadelphia Recorder of Deeds on August 6, 2012, is attached hereto as Exhibit 13 and incorporated herein.

By the Grace of God.

### Interim Rabbinical Court Ruling

Being that Mr. Jacob Unger and Mr. Shia Engel ("the defendants") are currently in the midst of hearings with Mr. Samuel Faibish and his partners ("the plaintiffs"), after they signed an arbitration agreement and accepted upon themselves to adhere to the opinion of the Rabbinical Court signed hereinafter, in regards to the asset located at the address of 1222-26 Locust St. Philadelphia Pa. which is under the ownership of the company named The Lincoln on Locust LP, on their behalf and on behalf of the aforementioned company, and the plaintiff moved to enjoin the defendants not to change the ownership of the asset, or to transfer the shares of the asset or a portion thereof to a third entity, and not to collateralize the asset through a mortgage or in any other manner, beyond currently existing mortgages against the asset; as well as not to commence any construction or renovations at the asset, until their case is determined. After hearing arguments of both parties, and after carefully examining the matter, it is the decision of the Rabbinical Court:

That the party of the defendants shall not alter any ownership of the asset or a portion thereof, or transfer any portion of the shares to any third entity, and not to collateralize the asset through a mortgage or any other manner beyond currently existing mortgages against the asset, as well as not to take any action to commence renovations or construction at the asset, until they obtain written authorization by the Rabbinical Court, or from the party of the plaintiffs.

On this we affixed our signatures 11 Av 5772, which corresponds to the calendar date of July 30, 2012

Says: {signature} Moshe Shlome Gabyaf .   Rabbinical Judge
Says: {signature} {illegible}.               Rabbinical Judge
Says: {signature} _____.         Rabbinical Judge

12. During the proceedings before the *Bet Din*, Ungar admitted to the Rabbis that East Mark
    International, Ltd., was his company or at least under his control.[12] *See* finding and order
    of Rabbi Moshe Shlomo Gobioff (the neutral *Bet Din* arbitrator) dated June 6, 2013,
    which states:

To the attention of Mr. Jacob Unger

Mr. Samuel Feivish appeared with a complaint against you that you are preparing to undertake sale proceedings against the asset at 1222-26 Locust St. Phil. PA. about which we are currently in the midst of deliberations; the aforementioned sent us a document from the attorney William J. Levant, whereby he advises that the company known as East Mark Int., Ltd, which - in my recollection - is your company, or at least under your control, is scheduled to sell the asset on the date of June 24, 2013.

Now, being that the Rabbi of Chakeve currently does not feel well, and at this time it is impossible to schedule a Rabbinical Court hearing to discuss the aforementioned matter;

Therefore, being that in my opinion the act of selling by East Mark Int., Ltd. is against the injunction that was issued by the empanelled Rabbinical Court, and is valid at this time as to the aforementioned asset, I advise you to halt to sale proceedings until we will convene to deliberate the matter and your case will see the light of resolution.

On this I affixed my signature, 28 Sivan 5773 {calendar date: June 6, 2013}

{signature} *Moshe Shlomo Gobioff*
          Moshe Shlomo Gobioff

---

[12] A true, correct and complete copy of the Hebrew and certified English translation of the finding and order of Rabbi Moshe Shlomo Gobioff (the neutral *Bet Din* arbitrator) dated June 6, 2013, is attached hereto as Exhibit 14 and incorporated herein.

13. It is no coincidence that the Fraudulent Loan was created by Ungar through Plaintiff, an entity he controls, approximately one month before he finally executed the Arbitration Agreement or that he initially deceived both the Movants and the *Bet Din* by not disclosing the existence of the Fraudulent Loan until after the Interim Rabbinical Court Ruling had been issued.[13]

14. Despite this, Ungar and Engel have absconded with the fire insurance proceeds received by Defendants, without even offering to return the funds invested in Defendants by Movants and their investors; and are now attempting to take the property itself without giving any compensation to Movants by virtue of the foreclosure of the sham mortgage in Plaintiff's name.

15. Moreover, Defendants, through the actions of Ungar and Engel, have not only failed to defend against the within foreclosure action, but actually instructed their counsel, Glen D. Kimball, Esquire, to accept service of the within complaint and to offer no opposition thereto on behalf of Lincoln and Adar, despite their fiduciary duty to the Defendants and Movants and their obligations under the injunction order entered by the *Bet Din* on July 30, 2012 (*see* Exhibit 13); and purposely ignoring the existence valid defenses to the Fraudulent Loan Documents and this lawsuit including, without limitation:

   A. No consideration having been given by East Mark International, Ltd., in exchange for the Note and Mortgage.

   B. No money being owed to East Mark International, Ltd., as no funds were ever advanced or loaned by East Mark to Defendants.

---

[13] The existence of the Fraudulent Mortgage was discovered by Faibish when he caused Exhibit 13 hereto to be filed with the Philadelphia Recorder of Deeds on August 6, 2012, who then reported this to the *Bet Din* at or around that time. *See* Faibish Affidavit at Exhibit 7.

C.  Any funds or other consideration advanced by East Mark International, Ltd., were not paid to or for the benefit of Lincoln; nor were such funds used by or for the benefit of Lincoln or the Premises. Instead, if an funds or other consideration were advanced they were advanced by, to or for the benefit of Ungar and Engel.

D.  At the time the Fraudulent Loan was made, Lincoln had no mortgage debt and was otherwise unencumbered. To the extent Lincoln required funds, it was already the beneficiary of approximately $4,000,000.00 from the fire loss insurance proceeds.

E.  No actual default enforceable by confession of judgment and foreclosure had occurred by Defendants under the Fraudulent Mortgage Documents.

F.  By the very terms of the Fraudulent Note, even if Plaintiff had advanced funds, it would not be entitled to confess judgment until and unless the "principal" and all outstanding amounts are not paid on or before July 28, 2013.  Interest during the two year term of the Note was scheduled to be paid annually in lump sums of $216,000.00 on July 28, 2012 and when the principal of $3,600,000.00 is also due on July 28, 2013. There is no remedy in the Note for the failure to pay the July 2012 interest payment. Instead, the Note explicitly states, in pertinent part:

> The principal sum owed shall be subject to payment of interest by maker at the rate of six percent (6%) per annum for the life of the loan which shall be two (2) years calculated annually. The interest shall be paid in accordance with the following schedule: A first payment of Two Hundred Sixteen Thousand Dollars ($216,000.00) to be paid on or before July 28, 2012; A second payment of Two Hundred Sixteen Thousand Dollars ($216,000.00) to be paid on or before July 28, 2013; and the balance of the principal amount of Three Million Six Hundred Thousand Dollars ($3,600,000.00) on or before July 28, 2013.

> This Note shall be payable in full on or before July 28, 2013. If not earlier paid, all outstanding amounts hereunder shall be due and payable no later than July 28, 2013, without any setoff.

\*        \*        \*

In the event any payment of principal is made after the due date thereof, Maker shall pay to Payee in addition to the principal due, interest thereon for each day the principal remains overdue and calculated at a rate of eight percent (8%) per annum based upon a 360 day year. Moreover, if any default be made in the payment of any amount of principal on the date on which it shall fall due and such default shall continue for ten (10) days, then in such event the entire unpaid balance of said principal sum together with interest to accrue thereon at the rate hereinbefore specified from the date of default and thereafter shall become immediately due and payable; and in such case Payee may also recover all costs of suit and other expenses in connection therewith, for enforcement of collection under this Note. Payee shall not be required to provide any written notice of Maker's default hereunder, nor shall Maker be entitled to cure any default hereunder following the ten (10) days grace period provided hereinabove. Upon default, all amounts owed under this Note are accelerated and become due.

*See* Exhibit A to Plaintiff's Complaint.

Therefore, the confession of judgment entered in this matter by East Mark is premature at best under the very Note that it relies upon to sustain the judgment.[14]

G. A defective and unenforceable warrant of attorney in the Fraudulent Note that does not comply with Pennsylvania law and is therefore unenforceable as a matter of law as Defendants did not sign a separate disclosure of the warrant of attorney andconfession of judgment provision nor did Defendants sign the actual warrant of attorney and confession of judgment provision contained in the Note. *See, e.g., Bancorp Bank v. Mancini,* 2013 Phila. Ct. Com. Pl. LEXIS 49 (Pa. C.P. 2013).

16. Although Ungar and Engel have failed to take any measures to protect Lincoln and Adar and the Premises from foreclosure by East Mark, they have not been so cavalier in their opposition to a Code enforcement action instituted by the City of Philadelphia against Lincoln on December 5, 2012, in the Philadelphia Court of Common Pleas at Docket No. 1212-00478.[15] To the contrary, represented by Glen D. Kimball, Esquire, the same

---

[14]Paragraph 29 of Plaintiff's Complaint, where the sole allegation of default made by East Mark, states: "Borrower is in default under the terms of the Note and Mortgage because it failed to timely tender the full payment of $216,000.00 that was due on July 28, 2012, and has not since done so."

[15] A true and correct copy of the Petition of the City of Philadelphia is attached hereto as Exhibit 15 and incorporated herein.

counsel as in this matter, Adar and Lincoln at the direction of Ungar and Engel are vigorously defending this action.[16]

17. Incredibly, Lincoln mentions the Arbitration Proceeding in its defense of the Code enforcement action,[17] but makes no mention of its alleged default of the Fraudulent Loan or the within foreclosure action.[18]

18. The first and only notice of the entry of judgment by confession against the Defendants in this matter given to Movants was the "NOTICE OF MARSHAL'S SALE AFFECTING YOUR PROPERTY INTEREST" sent by ordinary mail and dated May 22, 2013, by Plaintiff's counsel, William J. Levant, Esquire, (the "Notice Letter").[19] The Notice Letter was not received by Movants until May 26, 2013. (*See* Exhibit 7).

19. Upon receipt of the Notice Letter, Movant Faibish petitioned the *Bet Din* for relief, the result of which was the issuance of the June 6, 2013, finding and order of Rabbi Moshe Shlomo Gobioff (*see* Exhibit 14, whereby Ungar was found to be in violation of the July 30, 2012 injunction issued by the *Bet Din* and ordered to halt the Marshal's sale scheduled for June 24, 2013.

20. As of the date hereof, Ungar has failed and refused to obey the June 6, 2013 order of the *Bet Din* nor has he responded to Rabbi Gobioff.

---

[16] A true and correct copy of the preliminary objections of Lincoln is attached hereto as Exhibit 16 and incorporated herein.
[17] See Exhibit 16.
[18] At the time that Defendants' filed their preliminary objections in the Code enforcement action the within matter had not yet been commenced, however, Defendants, Ungar and Engel were most certainly aware that the Fraudulent Loan was in technical "default" as they had not paid the July 2012 interest payment.
[19] A true and correct copy of the Notice Letter is attached hereto as Exhibit 17 and incorporated herein.

21. As a result, the undersigned was retained by Movants to prepare this motion. In so doing,

the undersigned transmitted a letter to Plaintiff's counsel by PDF attachment to an email

dated June 18, 2013 (the "Levant Letter"),[20] stating:

> Please be advised that I have been retained by Samuel Faibish (a/k/a Feivish) to
> represent his interests in the real property located at 1222-26 Locust Street,
> Philadelphia, Pennsylvania, and the ownership entities thereof which are the subjects
> of the above captioned matter.  My client has instructed me to file the appropriate
> legal petitions to stop the Marshal's sale currently scheduled for June 24, 2013.  This
> will be done on Thursday unless you will agree to stop the sale.
>
> You should know that this property and its ownership entity have been the
> subject of ongoing litigation between my client, Jacob Ungar and Andre Engel
> regarding my client's ownership interest in Adar, LLC, and The Lincoln on Locust,
> L.P.  At present, the matter is in front of a *Bet Din* (Jewish Rabbinical Court), as a
> result an agreement to arbitrate entered into by my client, Ungar and Engel (*see* Ex. 1
> attached hereto).
>
> Most distressing, and something you certainly did not know, is that the mortgage
> you are enforcing on behalf of East Mark International, Ltd., ("East Mark"), will be
> shown to be fraudulent.  During the course of the *Bet Din* proceedings Mr. Ungar
> stated that East Mark is owned and/or controlled by him (*see* finding of Rabbi Moshe
> Shlomo Gobioff dated June 6, 2013 and attached hereto as Ex. 2).  Moreover, Mr.
> Ungar admitted to my client that the mortgage was phony and that no funds
> legitimately had been paid to Adar, LLC, or The Lincoln on Locust, L.P., by East
> Mark in support of the note and mortgage relied upon by you in the above referenced
> matter. Mr. Ungar has also never provided an accounting of the disposition of the
> alleged mortgage funds or, for that matter, the millions of dollars of insurance
> proceeds paid to Adar and Lincoln as a result of the complete fire loss of the building
> located at 1222-26 Locust Street.
>
> While the depth and breadth of the dispute between my client, Ungar and Engel
> cannot be fully addressed in this letter, I am hopeful that you will agree to voluntarily
> delay the Marshal's sale so that the legitimacy of the mortgage can be settled.

22. Mr. Levant responded by email seven minutes later, stating:[21]

> I have passed your email and letter along to my client.
> I will have no authority to delay the sale without direction from my client.
>
> Bill Levant

23. Mr. Levant, although requesting that any hearing on this Motion not take place on Friday,

has not made any further contact with the undersigned in response to the Levant Letter.

---

[20] A true and correct copy of the Levant Letter and covering email are attached hereto as Exhibit 18 and incorporated herein.

[21] A true and correct copy of the Levant Response is attached hereto as Exhibit 19 and incorporated herein.

24. As recognized by Plaintiff's counsel in issuing the Notice Letter to Movants, the July 30, 2012 injunction issued by the *Bet Din*, and filed with the Philadelphia Recorder of Deeds on August 6, 2012, constitutes an interest in the Premises and Movants are amongst the "Parties in Interest and Claimants" addressed in the Notice Letter, thereby conferring standing on the Movants to seek the relief requested hereby.

25. Movants, as valid lienholders against the Premises and with an interest in the Premises and the Defendants will also be filing a petition to strike off and/or open Plaintiff's confessed judgment, averring, amongst other claims, the bases set forth in paragraph 16 hereto.

26. Without the temporary restraining order and preliminary injunction requested hereby Movants will be immediately, severely and irreparably harmed, as follows:

   A. As shown hereinabove, the likelihood of Movant's emerging victorious from the Arbitration Proceeding is extremely likely. However, even when they succeed in the Arbitration Proceeding, their interest in the Defendants will be worthless as the Premises is the only asset remaining in Defendants' ownership and control.

   B. Ungar and Engel will have subverted the Arbitration Proceeding and taken over full control of the Premises by way of the Fraudulent Loan, thereby depriving Movants of the value of the Premises by way of their interest in the Defendants.

   C. As shown hereinabove, the Movants are very likely to prevail in their efforts to strike or open the defective confessed judgment.

   D. There are no alternative forms of relief, including money damages, which can prevent the harm to Movant's if the Marshal's sale is permitted to take place as scheduled.

E.   The Premises, though the building upon it was destroyed by fire, is unique, valuable and irreplaceable given its prime location in Center City Philadelphia; the value of which is increasing with economy in general and the real estate market in particular

27. Plaintiff in this matter would suffer no actual prejudice or harm if the Marshal's sale is postponed so that the matters set forth in this Motion can be fully, fairly and equitably resolved.

28. Allowing Plaintiff, Ungar and Engel to benefit from the use of our courts to enforce the Fraudulent Loan is against the public interest and a violation of very tenets fairness, adherence to the law and equity upon which our system of justice is built.

29. In accordance with F.R.Civ.P. R. 65(a) & (b), the court may issue preliminary injunctive relief and restraining orders, as follows:

(a) Preliminary Injunction.
(1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.
(2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning a hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

(b) Temporary Restraining Order.
(1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
(2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry--not to exceed 14 days--that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

(3) *Expediting the Preliminary-Injunction Hearing.* If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

(4) *Motion to Dissolve.* On 2 days' notice to the party who obtained the order without notice--or on shorter notice set by the court--the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) Security.  The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

(d) Contents and Scope of Every Injunction and Restraining Order.

(1) *Contents.* Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.

(2) *Persons Bound.* The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

30. In this matter, notice of Movant's intention to file this Motion on this date was given to counsel for all parties by Movant by way of the Levant Letter (Exhibit 19), and was responded to by counsel for the Plaintiff (the only party who would be affected at all by the relief requested hereby) within minutes (*see* the Levant Response, Exhibit 20). Further, Plaintiff's counsel expressed his availability for a hearing on this date and requested that, if possible the hearing not be scheduled on Friday, June 21, 2013; but also

stating that if the hearing was scheduled on June 21st, he would ask a colleague to attend.[22]

WHEREFORE, your Movant's by and through their undersigned counsel hereby respectfully requests that this Honorable Court enter an order enjoining and staying the Marshal's sale of the Premises, currently scheduled to take place on Monday, June 24, 2013, and such further relief as the Court deems is equitable and just under the circumstances.

Respectfully submitted:

THE LAW OFFICES OF ANDREW TEITELMAN P.C.

BY: _____

Andrew Teitelman
3103 Huntingdon Pike, Ste. 340
Huntingdon Valley, PA 19006
Phone: 267-255-6864
Fax: 215-434-7491
Email: ateitelman@teitelaw.com

Dated: June 20, 2013            *Counsel for Movants*

---

[22] A true and correct copy of the email from Mr. Levant dated June 18, 2013 at 6:26 p.m. is attached hereto as Exhibit 20 and incorporated herein.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion of Benzion S. Faibish and Yehuda Olewski for a temporary restraining order and preliminary injunction pursuant to F.R.Civ.P. 65(a)&(b) was served on this 20th day of June, 2013, on the following, as set forth below:

> William J. Levant, Esquire
> KAPLIN STEWART MELOFF REITER & STEIN, P.C.
> Post Office Box 3037
> 910 Harvest Drive, 2nd Floor (for overnight delivery)
> Blue Bell, PA 19422
> Email: wlevant@kaplaw.com
>
> *Via Email and ECF*
>
> Glen D. Kimball, Esquire
> O'CONNER KIMBALL LLP
> Two Penn Center Plaza, Ste.1100
> Philadelphia, PA 19102
> Email: gkimball@okllp.com
>
> *Via Email and ECF*

Andrew Teitelman

EXHIBIT 1

EXHIBIT A

## AGREEMENT TO SUBMIT TO ARBITRATION

We, the undersigned, hereby agree to submit to binding arbitration the following controversy: ANY ALL DISPUTES BETWEEN THE PARTIES INCLUDING BUT NOT LIMITED TO, LINCOLN & LOCUST LP, ADAR LLP.

We agree that the controversy be heard and determined by the following three arbitrators: Rabbi Moshe Gobioff, Rabbi ALEXANDER GRAUS , Rabbi ISAAC SELTEN REICH.

It is agreed that 50% of the arbitrators fees shall be paid by each party to the controversy; that the arbitrators may make their award based upon Din Torah, or compromise or any other way they wish to reach a decision; that no transcript of the proceedings need be made unless the arbitrators decide to hire a stenographer or minute taker whose cost shall be paid equally by the parties; that the arbitrators need not be sworn to hear and decide the controversy and arbitration may be conducted in whole or in part in a language other than English; that the arbitrators may decide to continue the hearing ex-parte should they find it to be necessary i.e. if either one of the parties refuses to appear and continue the hearings or causes more than acceptable delays of the hearings (acceptability is to be decided by the arbitrators); that the award of the arbitrators shall be in writing and shall be signed by at least two of the arbitrators and need not be acknowledged or notarized in order to be confirmed or enforced; that the parties agree that they will faithfully abide by and implement the award of the arbitrators and that judgment upon the award may be entered in the Supreme Court of the Sate of New York. or court of competent Jurisdiction

We understand that we have the right to be represented by attorneys or other advisors in the arbitration at any time but that any party may elect to proceed without an attorney and the parties shall have the right to argue for themselves before the arbitrators. The undersigned hereby waive formal notice of the time and place of the arbitration proceeding and consent that the arbitration be held and commence with the jurisdiction of the arbitrators to continue until a final award is made.

Dated: September 5, 2011

THE LINCOLN & LOCUST.

FOR THE Lincoln on Locust LP
AND ADAR LLC

F.B.&
Feler Fuchs
in the name of Lincoln on Locust L
and Adar LLC
in the Name of Lincoln on Locust LP.

EXHIBIT 2

Recording Requested/Prepared By:
**Maria Martinez**
**CT Lien Solutions formerly UCC**
**Direct**
**P.O.Box 29071**
**Glendale, CA 91209**
Voice: 800-331-3282



**51949764**
**Page: 1 of 4**
08/07/2008 05:17PM

This Document Recorded
08/07/2008
05:17PM
Doc Code: S          Commissioner of Records, City of Philadelphia

Doc Id 51949764
Receipt #: 731558
Rec Fee: 124.50

When Recorded Return To:
**CT Lien Solutions formerly UCC**
**Direct**
**P.O.Box 29071**
**Glendale, CA 91209**



## SATISFACTION PIECE

LOAN #: 995000034 "The Lincoln On Locust, Lp" Philadelphia County, Pennsylvania
Paid in Full Date: 05/13/2008                                         Dated: August 06, 2008

**STATE OF PENNSYLVANIA**
NAME OF MORTGAGOR: **THE LINCOLN ON LOCUST, LP**
ADDRESS: **1222- 1226 LOCUST ST. PHIADELPIA, PA  19107**

To **MARATHON STRUCTURED FINANCE FUND, LP, PHILADELPHIA COUNTY** County

Made **August 6, 2008**
Name of Mortgagor(s):     **THE LINCOLN ON LOCUST, LP**
Name of Mortgagee(s):     **WACHOVIA BANK, NATIONAL ASSOCIATION, AS MASTER SERVICER ON
BEHALF OF, LASALLE BANK, NA, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE
HOLDERS OF, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES MRECDO 061**
Name of Original Mortgagee(s):  **MARATHON STRUCTURED FINANCE FUND, LP**
Date of Mortgage:     **11/7/2005**
Original Mortgage Debt     **$8,000,000.00**
Mortgage recorded on **11/9/2005**, in the Office of the Recorder of Deeds of **PHILADELPHIA COUNTY**
County, **Pennsylvania**, in Mortgage Book  Page  Document **51310040**

Tax Parcel ID: **881012200**
Mortgage premises: **1222- 1226 LOCUST ST., PHIADELPIA, PA 19107**

Legal and/or Assignment: **SEE ATTACHED FOR LEGAL DESCRIPTION**

The undersigned hereby certifies that the debt secured by the above mentioned Mortgage has been fully paid or otherwise discharged and that upon the recording hereof said Mortgage shall be and is hereby fully and forever satisfied and discharged.

IN WITNESS WHEREOF, the said Corporation has caused its common or corporate seal to be hereunto affixed the **August 6, 2008**

Signed, Sealed and Delivered in the presence of:

**WACHOVIA BANK, NATIONAL ASSOCIATION, AS MASTER SERVICER ON BEHALF OF, LASALLE BANK, NA, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS OF, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES MRECDO 061 On August 06, 2008**

By: _____

**LASHANTA WALL**
**ASSISTANT VICE PRESIDENT**

STATE OF **CALIFORNIA**
COUNTY OF **LOS ANGELES**

On **August 06, 2008**, before me, **Tom Walz** a Notary Public in and for **LOS ANGELES** in the state of California, personally appeared **Lashanta Wall**, ~~ASSISTANT VICE PRESIDENT of WACHOVIA BANK, NATIONAL ASSOCIATION, AS MASTER SERVICER ON BEHALF OF, LASALLE BANK, NA, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS OF, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES MRECDO 061~~   personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____

Notary Public
**Tom Walz**

TOM WALZ
COMM. # 1715398
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. JAN. 7, 2011

(This area is for notarial seal)

Exhibit A

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot or parcel of ground, Situate in the city of Philadelphia, County of Philadelphia, State of Pennsylvania, bounded and described as follows:

BEGINNING at a point located on the South right-of-way line of Locust Street, said point being situate at the intersection of the West right-of-way line of South Camac Street with the aforementioned South right-of-way line of Locust Street; thence from the place of beginning along the aforementioned West right-of-line of South Camac Street, South seven degrees, fifty minutes and thirty-seven seconds West for a distance of one hundred forty-three and eighty-even hundredths feet to a point; thence, North eighty-two degrees, thirty-two minutes and eleven seconds West for a distance of sixty and no hundredths feet to a point; thence North seven degrees, fifty minutes and thirty-seven seconds East for a distance of one hundred forty-three and eighty-seven hundredths feet to a point; thence along the aforementioned South right-of-way line of Locust Street, South eighty-two degrees, thirty-two minutes and eleven seconds East for a distance of sixty and no hundredths feet to the place of beginning.

Grantor further assigns and quitclaims to Grantee Grantor's inchoate adverse possession claims to any portion of the land underlying the building constructed on the property herein conveyed that may encroach upon any adjoining property, including, without limitation, any portion of the building that may encroach over the southern boundary of the property from such southern boundary to the present common party wall with the building constructed on the property to the south of the property herein conveyed.

Being known as 1222-26 Locust Street

Exhibit B
Full Chain of Title

Having been assign to LASALLE BANK, NA, AS TRUSTEE FOR THE BENEFIT OF
THE CERTIFICATE HOLDERS OF, COMMERCIAL MORTGAGE PASS-
THROUGH CERTIFICATES SERIES MRECDO 061 by assignment recorded 7/14/2006
as doc no.51484432.

Also to release an assignment of leases and rents recorded 11/9/2005 as doc no.
51310041.

Having been assign to LASALLE BANK, NA, AS TRUSTEE FOR THE BENEFIT OF
THE CERTIFICATE HOLDERS OF, COMMERCIAL MORTGAGE PASS-
THROUGH CERTIFICATES SERIES MRECDO 061 by assignment recorded 7/16/2008
as doc no. 51937847.

EXHIBIT 3

Page 1 of 2

## Claim Status As Of: 6/30/2009 3:55:59 PM

TRAVELERS

Claim No: CFT7387
SAI Nbr: 2851J1122
Claimant: /BHUMI REAL ESTATE, LLC
DOL: 07/01/2006
Policy#: YJ630 5072A70A

Office: 877
Acct Name: /BHUMI REAL ESTATE, LLC

Rptd TIC: 07/03/2006
From: 11/14/05

Close Dt:
To: 11/14/06

Location: 5072A70A630
File Prefix: FR
# Clmnts: 001
Status: ACTIVE

Claim Rep: PDL

---

### ACCIDENT LOCATION

1222-1224 LOCUST ST.
PHILADELPHIA
PA

### RISK LOCATION

BHUMI REAL ESTATE, LLC
1222-1224 LOCUST STREET
PHILADELPHIA
PA  19107

---

### DESCRIPTION OF ACCIDENT

4-ALARM FIRE STARTED AT INSD'S PROPERTY. CAUSE UNKNOWN. /

---

### FINANCIAL SUMMARY

**Total Number of Claimants: 001**

| | BI: 000 | PD: 000 | IN: 001 |
|---|---|---|---|
| **Kind** | **Incurred** | **Paid** | **Outstanding** |
| **TOTAL** | **$12,250,000.00** | **$11,736,930.00** | **$513,066.20** |
| CLAIM | $11,900,000.00 | $11,456,740.00 | $443,262.00 |
| EXPENSE | $350,000.00 | $280,195.80 | $69,804.16 |

---

### CLAIMANT DETAILS

**Total Number of Claimants: 001**

| Claimant | Type | Incurred | Paid | Outstanding |
|---|---|---|---|---|
| All Claimants | | **$12,250,000.00** | **$11,736,930.00** | **$513,066.20** |
| 001  /BHUMI REAL ESTATE, LLC | IN | $12,250,000.00 | $11,736,933.82 | $513,066.00 |

*Note: Claimant level financial information does not reflect recoveries or offsets.*

---

### CLAIM REPRESENTATIVE INFORMATION

| | | |
|---|---|---|
| Claim Rep: PAUL LETTAU | Phone: (330) 758-6568 | Mail ID: PLETTAU@TRAVELERS.COM |
| Supervisor: ROBERT SULLIVAN | Phone: (860) 277-2461 | Mail ID: RASULLIV@TRAVELERS.COM |

https://rmis.travelers.com/cms/stprt.asp?hdrType=STATFS&Adj=PDL&CLMNO=CFT7387&OF...   6/30/2009

Ex. 2

**Claim Payments As Of:** 6/30/2009 3:56:54 PM

TRAVELERS J

Claim No: CFT7387
SAI Nbr: 2851J1122
Claimant: /BHUMI REAL ESTATE, LLC
DOL: 07/01/2006
Policy#: YJ630 5072A70A

Office: 877
Acct Name: /BHUMI REAL ESTATE, LLC

Rptd TIC: 07/03/2006
From: 11/14/05

Close Dt:
To: 11/14/06

Location: 5072A70A630 Claim Rep: PDL
File Prefix: FR
# Clmnts: 001
Status: ACTIVE

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 07/24/2006 | B / | $500,000.00 | CANCELLED | | CLM |
| Payee: YOUNG ADJUSTMENT CO & MARATHON STRUCTURED FIN FUND | | | | Claimant Number: 001 | |
| 07/21/2006 | B / | $465.00 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number: 001 | |
| 07/28/2006 | B / | $1,156.31 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number: 001 | |
| 08/04/2006 | B / | $4,300.80 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number: 001 | |
| 08/10/2006 | BUS / | $100,000.00 | ISSUED DC | | CLM |
| Payee: YOUNG ADJUSTMENT CO | | | | Claimant Number: 001 | |
| 08/10/2006 | B / | $400,000.00 | ISSUED DC | | CLM |
| Payee: YOUNG ADJ CO AND MARATHON STRUCTURED FINANCE FD LP | | | | Claimant Number: 001 | |
| 07/10/2006 | B / | $2,760.00 | ISSUED FO | | 00000000000 |
| Payee: | | | | Claimant Number: 001 | |
| 07/17/2006 | B / | $1,840.00 | ISSUED FO | | 00000000000 |
| Payee: | | | | Claimant Number: 001 | |
| 07/24/2006 | B / | $2,961.00 | ISSUED FO | | 00000000000 |
| Payee: | | | | Claimant Number: 001 | |
| 07/24/2006 | B / | $92.00 | ISSUED FO | | 00000000000 |
| Payee: | | | | Claimant Number: 001 | |
| 08/11/2006 | B / | $28.67 | ISSUED FO | | STAFFSUBRD |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| Payee: | | | | | Claimant Number: 001 |
| 08/14/2006 | B / | $349.60 | ISSUED FO | | 00000000000 |
| Payee: | | | | | Claimant Number: 001 |
| 08/18/2006 | B / | $200.71 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | | Claimant Number: 001 |
| 08/25/2006 | B / | $1,404.93 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | | Claimant Number: 001 |
| 08/28/2006 | B / | $552.00 | ISSUED FO | | 00000000000 |
| Payee: | | | | | Claimant Number: 001 |
| 09/01/2006 | B / | $43.02 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | | Claimant Number: 001 |
| 09/04/2006 | B / | $46.00 | ISSUED FO | | 00000000000 |
| Payee: | | | | | Claimant Number: 001 |
| 09/11/2006 | B / | $2,149.30 | ISSUED DC | | CLM |
| Payee: F B DAVIS SONS | | | | | Claimant Number: 001 |
| 09/08/2006 | B / | $1,146.92 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | | Claimant Number: 001 |
| 09/15/2006 | B / | $2,882.20 | ISSUED DC | | CLM |
| Payee: O'NEILL ASSOCIATES | | | | | Claimant Number: 001 |
| 09/15/2006 | B / | $86.02 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | | Claimant Number: 001 |
| 09/22/2006 | B / | $30.00 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | | Claimant Number: 001 |
| 09/29/2006 | B / | $1,045.00 | ISSUED DC | | PROP APPR |
| Payee: BRAWER HAUPTMAN ARCHITECTS | | | | | Claimant Number: 001 |
| 09/29/2006 | B / | $71.69 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |

Claim Management System - Payments

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 10/04/2006 | B / | $76.00 | ISSUED DC | | PROP APPR |
| Payee: VAISALA INC | | | | Claimant Number: 001 | |
| 10/13/2006 | B / | $43.01 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number: 001 | |
| 10/18/2006 | B / | $18,857.00 | ISSUED DC | | CLM |
| Payee: C.N. TIMBIE ENGINEERS, INC. | | | | Claimant Number: 001 | |
| 10/23/2006 | B / | $838.00 | ISSUED DC | | PROP APPR |
| Payee: NATIONAL FORENSIC CONSULTANTS INC | | | | Claimant Number: 001 | |
| 10/23/2006 | B / | $1,540.00 | ISSUED DC | | CLM |
| Payee: BRAWER HAUPTMAN ARCHITECTS | | | | Claimant Number: 001 | |
| 10/20/2006 | B / | $2,193.42 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number: 001 | |
| 10/27/2006 | B / | $43.01 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number: 001 | |
| 11/15/2006 | BUS / | $300,000.00 | CANCELLED | | CLM |
| Payee: YOUNG ADJUSTMENT | | | | Claimant Number: 001 | |
| 11/15/2006 | B / | $50,000.00 | ISSUED DC | | CLM |
| Payee: HAINES AND KIBBLEHOUSE INC | | | | Claimant Number: 001 | |
| 11/17/2006 | B / | $43.01 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number: 001 | |
| 11/22/2006 | BUS / | $300,000.00 | ISSUED DC | | CLM |
| Payee: YOUNG ADJUSTMENT COMPANY, INC | | | | Claimant Number: 001 | |
| 11/24/2006 | B / | $71.68 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number: 001 | |
| 12/11/2006 | B / | $3,460.50 | ISSUED DC | | PROP APPR |
| Payee: KRIEGSTEIN KIM WRIGHT PC | | | | Claimant Number: 001 | |
| 12/11/2006 | B / | $330.00 | ISSUED DC | | PROP APPR |
| Payee: BRAWER AND HAUPTMAN ARCHITECTS | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 12/15/2006 | B / | $66.30 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 12/22/2006 | B / | $44.21 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 01/03/2007 | B / | $1,051.10 | ISSUED DC | | CLM |
| Payee:  MICHAEL PLICK ASSOCS | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 01/05/2007 | B / | $22.11 | ISSUED FO | | STAFFSUBRD |
| Payee: | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 02/02/2007 | B / | $425.50 | ISSUED DC | | CLM |
| Payee:  SURE GUARD SECURITY SYSTEMS | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 02/08/2007 | B / | $229,523.00 | ISSUED DC | | CLM |
| Payee:  HAINES AND KIBBLEHOUSE, INC | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 02/08/2007 | B / | $68,239.00 | ISSUED DC | | CLM |
| Payee:  HAINES AND KIBBLEHOUSE INC | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 02/13/2007 | BUS / | $100,000.00 | ISSUED DC | | CLM |
| Payee:  YOUNG ADJUSTMENT COMPANY INC | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 03/12/2007 | BUS / | $300,000.00 | ISSUED DC | | CLM |
| Payee:  YOUNG ADJUSTMENT CO | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 03/19/2007 | B / | $6,824.25 | ISSUED DC | | PROP APPR |
| Payee:  F B DAVIS SONS CMI | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 04/09/2007 | B / | $1,100.00 | ISSUED DC | | PROP APPR |
| Payee:  BRAWER AND HAUPTMAN ARCHITECTS | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 06/29/2007 | B / | $2,500,000.00 | ISSUED FO | | CLM |
| Payee:  MARATHON STRUCTURED FINANCE FUND LP; LINCOLN | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 07/19/2007 | BUS / | $200,000.00 | ISSUED DC | | CLM |
| Payee:  YOUNG ADJUSTMENT COMPANY | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 07/20/2007 | B / | $34,684.56 | ISSUED DC | | PROP APPR |
| Payee:  WEST ASSOCIATES, INC. | | | | Claimant Number:  001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 08/13/2007 | B / | $2,033.93 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOC., INC. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 08/13/2007 | B / | $1,213.21 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOC, INC. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 09/05/2007 | BUS / | $200,000.00 | ISSUED DC | | CLM |
| Payee: YOUNG ADJUSTMENT COMPANY | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 09/10/2007 | B / | $9,352.85 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 10/17/2007 | B / | $5,814.23 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 11/09/2007 | B / | $3,900.00 | ISSUED DC | | PROP APPR |
| Payee: ABATETECH | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 11/09/2007 | B / | $2,419.01 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 11/12/2007 | BUS / | $200,000.00 | ISSUED DC | | CLM |
| Payee: YOUNG ADJUSTMENT COMPANY | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 01/09/2008 | B / | $4,216.58 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 01/21/2008 | B / | $22,999.09 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOC., INC. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 01/21/2008 | B / | $990.00 | ISSUED DC | | PROP APPR |
| Payee: KREIGSTEIN, KIM & WRIGHT, P.C. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 02/21/2008 | B / | $2,750,000.00 | ISSUED FO | | CLM |
| Payee: LINCOLN & LOCUST L.P. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 03/03/2008 | B / | $4,290.00 | ISSUED DC | | PROP APPR |
| Payee: KREIGSTEIN, KIM & WRIGHT, P.C. | | | | Claimant Number: 001 | |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 03/03/2008 | B / | $6,217.50 | ISSUED DC | | PROP APPR |

Claim Management System - Payments                                      Page 6 of 8

| Payee: KREIGSTEIN, KIM & WRIGHT, P.C. | | | | | Claimant Number: 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
|---|---|---|---|---|---|
| 03/03/2008 | B / | $13,244.50 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 03/12/2008 | B / | $22,747.32 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 04/09/2008 | B / | $1,431.00 | ISSUED DC | | PROP APPR |
| Payee: KREIGSTEIN, KIM & WRIGHT, P.C. | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 04/21/2008 | B / | $18,414.61 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MGMT ASSOCIATES, INC. | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 04/23/2008 | B / | $4,000,000.00 | CANCELLED | | CLM |
| Payee: BHUMI REAL ESTATE, LLC AND | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 05/02/2008 | B / | $4,000,000.00 | ISSUED FO | | CLM |
| Payee: LINCOLN ON LOCUST | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 05/14/2008 | B / | $4,124.25 | ISSUED DC | | PROP APPR |
| Payee: KREIGSTEIN, KIM, & WRIGHT, P.C. | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 05/16/2008 | B / | $7,597.35 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 05/28/2008 | B / | $3,075.75 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 06/09/2008 | B / | $138.00 | ISSUED FO | | 00000000000 |
| Payee: | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 06/17/2008 | B / | $34,642.43 | ISSUED DC | | PROP APPR |
| Payee: LANGFORD MANAGEMENT ASSOCIATES | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 06/23/2008 | B / | $36.80 | ISSUED FO | | 00000000000 |
| Payee: | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |
| 06/30/2008 | B / | $27.60 | ISSUED FO | | 00000000000 |
| Payee: | | | | | Claimant Number: 001 |
| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: |

Claim Management System - Payments

| | | | | | | |
|---|---|---|---|---|---|---|
| 07/07/2008 | B / | $368.00 | ISSUED FO | | | 0000000000 |
| Payee: | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 07/14/2008 | B / | $11,857.15 | ISSUED DC | | PROP APPR | |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 07/21/2008 | B / | $506.00 | ISSUED FO | | 0000000000 | |
| Payee: | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 07/28/2008 | B / | $92.00 | ISSUED FO | | 0000000000 | |
| Payee: | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 08/14/2008 | B / | $14,985.26 | ISSUED DC | | PROP APPR | |
| Payee: LANGFORD MANAGEMENT ASSOCIATES, INC. | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 08/11/2008 | B / | $322.00 | ISSUED FO | | 0000000000 | |
| Payee: | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 08/18/2008 | B / | $92.00 | ISSUED FO | | 0000000000 | |
| Payee: | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 08/27/2008 | B / | $32,070.89 | ISSUED DC | | CLM | |
| Payee: HAINES & KIBBLEHOUSE | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 08/29/2008 | B / | $32,154.00 | ISSUED DC | | PROP APPR | |
| Payee: SHOEMAKER CONSTRUCTION CO. | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 09/03/2008 | B / | $1,255.50 | ISSUED DC | | PROP APPR | |
| Payee: KREIGSTEIN, KIM & WRIGHT, P.C. | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 09/01/2008 | B / | $469.20 | ISSUED FO | | 0000000000 | |
| Payee: | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 09/08/2008 | B / | $46.00 | ISSUED FO | | 0000000000 | |
| Payee: | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 09/15/2008 | B / | $9.20 | ISSUED FO | | 0000000000 | |
| Payee: | | | | | Claimant Number: | 001 |

| Date: | Cov/Kind: | Amount: | Status: | Kind: | Explanation: | |
|---|---|---|---|---|---|---|
| 10/13/2008 | B / | $9.20 | ISSUED FO | | 0000000000 | |
| Payee: | | | | | Claimant Number: | 001 |

System - Payments

| Date: 11/17/2008 | Cov/Kind: B / | Amount: $2,862.00 | Status: ISSUED D? | Kind: | Explanation: PROP APPR |
| Payee: KRIEGSTEIN, KIM & WRIGHT, P.C. | | | | Claimant Number: 001 | |

| Date: 12/01/2008 | Cov/Kind: B / | Amount: $46.00 | Status: ISSUED FO | Kind: | Explanation: 00000000000 |
| Payee: | | | | Claimant Number: 001 | |

| Date: 12/15/2008 | Cov/Kind: B / | Amount: $9.20 | Status: ISSUED FO | Kind: | Explanation: 00000000000 |
| Payee: | | | | Claimant Number: 001 | |

| Date: 01/19/2009 | Cov/Kind: B / | Amount: $10.20 | Status: ISSUED FO | Kind: | Explanation: 00000000000 |
| Payee: | | | | Claimant Number: 001 | |

| Date: 02/16/2009 | Cov/Kind: B / | Amount: $10.20 | Status: ISSUED FO | Kind: | Explanation: 00000000000 |
| Payee: | | | | Claimant Number: 001 | |

| Date: 02/23/2009 | Cov/Kind: B / | Amount: $204.00 | Status: ISSUED FO | Kind: | Explanation: 00000000000 |
| Payee: | | | | Claimant Number: 001 | |

| Date: 04/13/2009 | Cov/Kind: B / | Amount: $10.20 | Status: ISSUED FO | Kind: | Explanation: 00000000000 |
| Payee: | | | | Claimant Number: 001 | |

| Date: 04/27/2009 | Cov/Kind: B / | Amount: $10.20 | Status: ISSUED FO | Kind: | Explanation: 00000000000 |
| Payee: | | | | Claimant Number: 001 | |

| Date: 06/01/2009 | Cov/Kind: B / | Amount: $10.20 | Status: ISSUED FO | Kind: | Explanation: 00000000000 |
| Payee: | | | | Claimant Number: 001 | |

*Number of Payments Returned: 102*

| PARAMETERS USED IN RETRIEVING PAYMENTS | |
|---|---|
| Claim Number: | CFT7387 |
| Loss Designator: | FR |
| Claimant Number: | 001 |
| Payment Kinds selected: | |
| Claim Payment Types selected: | |

Office: 877 / HO MAJOR CASE - PROPERTY
Address:  ONE TOWER SQ 6MS
HARTFORD, CT 06183
Phone: (860) 277-5071

**EXHIBIT 4**

 # The Office of Property Assessment

| Property Location | |
|---|---|
| Address: | 1222-26 LOCUST ST |
| Unit Number: | |
| Zip Code: | 191075612 |
| Zoning: | R10 |
| Zoning Description: | Multi Family Row and Twin |

| Owner Information | |
|---|---|
| Owner(s): | LINCOLN ON LOCUST LP |
| Account Number: | 881012200 |
| Mailing Address: | LINCOLN ON LOCUST LP , |
| | 328 GRAND AVENUE |
| | BROOKLYN |
| | NY, 11238-1924 |

| Property Characteristics | |
|---|---|
| Land Area: | 8633 SqFt |
| Improvement Description: | APTS 5-50 UNTS MASONRY |
| Improvement Area: | 41216 SqFt |
| Beginning Point: | NWC CAMAC ST |
| Exterior Condition: | Average |

| Certified Values for 2014 | |
|---|---|
| Market Value: | $5,165,000 |
| Assessed Land (Taxable): | $532,384 |
| Assessed Improvement (Taxable): | $4,632,616 |
| Assessed Land (Exempt): | $0 |
| Assessed Improvement (Exempt): | $0 |
| Total Assessment: | $5,165,000 |

| Sale Information | |
|---|---|
| Sale Date: | 11/7/2005 |
| Sale Price: | $7,000,000 |

| Tax Information | |
|---|---|
| Real Estate Tax: | |

| Certified Values | | | | | | | |
|---|---|---|---|---|---|---|---|
| Year | Market Value | Assessed Land (Taxable) | Assessed Land (Exempt) | Assessed Improvement (Taxable) | Assessed Improvement (Exempt) | Total Assessment | Gross Tax |
| 2014 | $5,165,000 | $532,384 | $0 | $4,632,616 | $0 | $5,165,000 | |
| 2013 | $567,900 | $138,144 | $0 | $43,584 | $0 | $181,728 | $17,756.64 |
| 2012 | $567,900 | $138,144 | $0 | $43,584 | $0 | $181,728 | $17,140.58 |
| 2011 | $567,900 | $138,144 | $0 | $43,584 | $0 | $181,728 | $16,504.54 |
| 2010 | $567,900 | $138,144 | $0 | $43,584 | $0 | $181,728 | $15,018.00 |
| 2009 | $567,900 | $138,144 | $0 | $43,584 | $0 | $181,728 | $15,018.00 |
| 2008 | $567,900 | $138,144 | $0 | $43,584 | $0 | $181,728 | $15,018.00 |

© 2006 Office of Property Assessment. All Rights Reserved.