IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EAST MARK INTERNATIONAL, LTD. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ADAR, LLC, | : | NO. 13-1204 |
| d/b/a THE LINCOLN ON LOCUST, | : | |
| L.P. | : | |

MEMORANDUM

Bartle, J.                                          January 24, 2014

   Before the court is the motion of intervenors Benzion "Sam" Faibish ("Faibish") and Yehuda Olewski ("Olewski") for reasonable counsel fees and costs pursuant to Rule 16(f)(1)(C) of the Federal Rules of Civil Procedure.

   This diversity action arose out of a dispute over the ownership of the building located at 1222-1226 Locust Street in Philadelphia. Plaintiff East Mark International, Ltd. ("East Mark"), a Marshall Islands corporation with its principal place of business in Hong Kong, was the holder of a mortgage for $3,600,000 on the building. Following an alleged default by the owner, defendant ADAR d/b/a The Lincoln on Locust, L.P. ("Lincoln on Locust"), East Mark filed a complaint for confession of judgment in this court in March 2013. After the Clerk of Court entered judgment in favor of East Mark and a Marshal's sale was scheduled, the intervenors filed an "emergency motion for temporary restraining order" in this court on June 6, 2013.

In their emergency motion, the intervenors alleged that they had a 42.5% ownership interest in Lincoln on Locust and the building at issue.  They further asserted that the mortgage held by East Mark was a fraud intended to deprive them of their ownership interest in the property.  We granted the motion for a temporary restraining order on June 21, 2013.  The order cancelled the Marshal's Sale of the property which was to take place on June 24, 2013.  On July 2, 2013, we extended the temporary restraining order through July 17, 2013.  We scheduled a preliminary injunction hearing for August 14, 2013.

On August 13, 2013, a day before the hearing was to occur, Faibish, Olewski, East Mark, and Lincoln on Locust filed a stipulation for court approval.  We approved the stipulation the same day, and the hearing was cancelled.  The Stipulated Order stated in relevant part:

> It is hereby stipulated agreed [sic] by and between East Mark International, Ltd. ("East Mark"), plaintiff herein, and Adar, LLC d/b/a The Lincoln on Locust, L.P. (collectively "Adar"), defendants herein, and Benzion ("Sam") Faibish and Yehuda Olewski (collectively "Intervenors"), as follows:
>
> 1. Intervenors' Petition to Strike/Open Confessed Judgment shall be deemed and marked as withdrawn.
> ...
> 4. Defendants and intervenors have agreed that the dispute between the parties relating to the property located at and known as 1222-1226 Locust Street, Philadelphia, Pennsylvania 19107 (the "Property"), shall be resolved through an agreed upon Rabbinical Court, in a Bet Din proceeding (the "Bet Din proceeding").

> 5. East Mark shall not take any further action on the judgment by confession obtained in this case on or about March 6, 2013, except as specifically permitted or required by the Bet Din proceeding.
> 6. The hearing scheduled for August 14-15, 2013, shall be canceled as moot.
> 7. Intervenors' bond posted in this matter shall be released to Intervenors.

On October 17, 2013, Faibish and Olewski, along with I.M. Rottenburg and Kalman Farkas, filed a motion "to enforce stipulated Order and for mandatory injunctive relief."[1] In their motion, intervenors maintained that Lincoln on Locust as well as East Mark violated the Stipulated Order when East Mark filed on September 17, 2013 an "emergency petition to strike the lis pendens filed against the property located at 1222-1226 Locust Street, Philadelphia, Pennsylvania, and to complete specific performance under agreement of sale" in the Court of Common Pleas of Philadelphia County. See East Mark Int'l, Ltd. v. Lincoln on Locust, L.P. et al., Phila. Com. Pl. Ct., Sept. Term, 2013, No. 01879. The lis pendens consisted of the July 30, 2012 order of a Bet Din which had been filed with the Recorder of Deeds of Philadelphia County and prohibited the sale of the building without authorization of the Bet Din. The Common Pleas Court granted East Mark's petition on September 24, 2013 and struck the lis pendens from the record.

---

1. Rottenburg and Farkas did not move to intervene as parties and were not considered parties for the purpose of the emergency motion.

With the lien removed, there was no impediment recorded on the title to prevent Lincoln on Locust from selling the property to a third party without the approval of the intervenors. As it turned out, Lincoln on Locust had entered into an agreement of sale with Pelican Properties, LLC ("Pelican"), an arms-length buyer, back on January 30, 2013, subject to the removal of the lis pendens. Closing took place on September 25, 2013, a day after the Common Pleas Court had granted the petition to strike the lis pendens.[2] Since East Mark, the mortgagee, was due more than the sale price, all moneys would end up with East Mark and none with the seller, Lincoln on Locust.

On October 24-25, 2013, we held an evidentiary hearing on the emergency motion of the intervenors to enforce the Stipulated Order and for injunctive relief. In an order dated October 28, 2013, we denied the emergency motion on the grounds that East Mark had not violated the Stipulated Order when it took action in state court to remove the lis pendens from the building. Paragraph 4 of the Stipulated Order related only to Lincoln on Locust and the intervenors and did not apply to East Mark. For its part, East Mark was simply obligated in paragraph 5 "not [to] take any further action on the judgment by confession

---

2. The deed was immediately recorded in the name of Twelve22 LP, a subsidiary of Pelican, which deposited $513,675.59 of the purchase price in escrow with First Platinum Abstract Title Company and was scheduled to pay the balance, $1,785,509.18, on October 25, 2013.

obtained in this case on or about March 6, 2013, except as specifically required by the Bet Din proceeding."  Whatever the legality of East Mark's actions in state court to remove the lis pendens, its actions there did not involve "further action on the judgment by confession" entered in this court.  East Mark Int'l Ltd. v. ADAR, LLC, Civil Action No. 13-1204, 2013 U.S. Dist. LEXIS 154039 (E.D. Pa. Oct. 28, 2013).  Moreover, the sale of the property would cause no harm to intervenors since their alleged interest in the property would be consumed by the satisfaction of the mortgage held by East Mark.

As part of our October 28, 2013 Order, we ordered defendant Lincoln on Locust and its counsel, O'Connor Kimball LLP ("Kimball"), jointly and severally, to pay intervenors their reasonable counsel fees and costs on the ground that Lincoln on Locust had flagrantly violated this court's August 13, 2013 Stipulated Order by proceeding to sell the building without prior authorization from an agreed-upon Bet Din proceeding.  The court relied on Rule 16(f)(1)(C) of the Federal Rules of Civil Procedure which provides:  "On motion or on its own, the court may issue any just orders... if a party or its attorney: ... (C) fails to obey a scheduling or other pretrial order."  In the event that intervenors, Lincoln on Locust, and Kimball could not agree on the amount of reasonable counsel fees and costs, we directed intervenors to file a motion, which they did on November 15, 2013.  Rule 16(f)(2) provides:  "Instead of or in addition to any other sanction, the court must order the party,

its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

I.

Lincoln on Locust and Kimball do not dispute under Rule 16(f)(2) that they failed to obey a pretrial order.  They do not argue that their noncompliance was substantially justified or that there were circumstances which would make an award of expenses unjustified.  Instead, they object to individual time entries logged by intervenors' attorney Kevin Watson, Esq. and the hourly rate of both Watson and intervenors' other attorney, Andrew Teitelman, Esq.

Intervenors have submitted detailed time records in support of their motion.  Teitelman, the lead counsel for intervenors, logged 41.6 hours at an hourly rate of $300, for a total of $12,480.  However, the parties have agreed that Teitelman will seek no more than $12,000 in fees.

Watson and his associates, Stephanie L. Anderson and Julianne Darlus, who initially represented I.M. Rottenburg and Kalman Farkas, logged 66.70 hours.  Watson's hourly rate is $300, while his associates' rates are $200 and $90 respectively, bringing his total to $17,462 in professional services rendered.  Watson also billed $781.96 in costs.

II.

We turn first to the objections of Lincoln on Locust and Kimball to individual time entries submitted by Watson.  A court calculating the hours reasonably expended in litigation must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  Public Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995).  Our Court of Appeals has stressed that the district court has "a positive and affirmative function in the fee fixing process, not merely a passive role."  Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).  Furthermore, the party opposing the motion for fees has the burden "to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  We may only reduce the requested fee, whether by reducing the hours worked or the hourly rate, on grounds raised by the party opposing the fee award, but we exercise our discretion to achieve a reasonable fee in light of any objections raised.  Id.

Lincoln on Locust and Kimball contend that many of the hours for which intervenors seek fees represent unnecessary or duplicative work on the part of Watson.  Their first challenge to individual time entries involves those entries that pre-date Watson's appearance on behalf of intervenors.  Prior to

October 22, 2013, when he entered his appearance on behalf of Faibish and Olewski, Watson represented only Kalman Farkas and I.M. Rottenberg, who were not parties to the action. In our view, while Watson may have worked on similar issues pertinent to the matter while representing Farkas and Rottenberg, it would be inappropriate to require Lincoln on Locust and Kimball to reimburse intervenors for Watson's fees incurred while counsel to other individuals and not to the intervenors. As such, we will reduce Watson's fees by $4,850.

Lincoln on Locust and Kimball also challenges three entries, dated October 22, 2013 and October 23, 2013 that total 4.3 hours. According to the entries, they correspond to time spent researching and analyzing federal rules regarding subpoena procedures. Lincoln on Locust and Kimball argue that 4.3 hours is excessive and unnecessary to complete the stated task. They also object to the third entry, dated October 23, 2013, on the ground that the work described therein was performed after the date the subpoena was issued and thus the research was unnecessary. We agree that 4.3 hours is excessive to perform the task as described and that the research performed following the date the subpoena was issued was unnecessary. We will reduce the hours to be reimbursed to 1.8, for a fee reduction of $500.

Lincoln on Locust and Kimball further contest two entries dated October 22, 2013. One entry is for .60 hours of work performed by Stephanie Anderson, Watson's associate, for drafting a subpoena "to appear and testify at hearing and

accompanying letter for First Platinum Abstract." The second entry is for $90 in expenses for an "advance of witness fees" to Dennis Richman Services. Lincoln on Locust and Kimball argue that neither they nor plaintiff East Mark ever received a copy of the referenced subpoena and that it was improperly served ex parte on the witness. We find this objection to be without merit and decline to reduce the fees and expenses in the aforementioned entries.

There is also a challenge to two fee entries for preparing and filing "petition to intervene and to strike in state court," and legal research regarding "state court complaint seeking enforcement of interim order from Rabbinical Court" as well as an expense entry for "filing fee for motion," all totaling $1,407.68. It is contended that these three entries relate to the filing of a state court case and are unrelated to the intervenors' emergency motion in this court. While we recognize that the state court action may have substantially overlapped with the emergency motion in this court, we concur that it would be inappropriate to require reimbursement to the intervenors for such fees. Moreover, in his correspondence with Kimball leading up to the filing of the pending motion for counsel fees, Teitelman stated that his clients would concede this objection. As such, we will reduce the total fees and expenses for Watson by $1,407.68.

Lincoln on Locust and Kimball further challenge Watson's entry dated October 28, 2013 for "telephone conference

with A. Teitelman and S. Faibish regarding: strategy- review and respond to e-mail to G. Kimball requesting attorney fees and cost info."  The objection to this entry is based on the ground that any discussion of strategy relative to responding to Kimball's request is outside the scope of reasonable counsel fees.  We are not persuaded and will leave the entry undisturbed.

Lincoln on Locust and Kimball next object to a time entry dated October 23, 2013 for "assist[ing] in preparation for emergency hearing."  This entry for $400 describes two hours of work by Watson's associate, Stefanie Anderson.  We reject the argument that the entry is too vague and fails to explain the task identified.  Two hours is a reasonable amount of time for Anderson to spend helping Watson prepare for the hearing, which was held on October 24 and 25, 2013.

The final objection focuses on two expense entries, dated October 21 and 23, 2013, for "filing fee for stipulation" and "filing fee for intervenor complaint," on the grounds that there was no stipulation or complaint filed on either of those dates.  We agree that no complaint or stipulation was filed on the dates shown on the invoice.  Moreover, as the docket in this matter reflects, the stipulation was filed in error and was subsequently forwarded to the court for our approval.  We will accordingly reduce Watson's expenses by $319.08.

In sum, the expenses and fees of Watson and his associates will be reduced by $7076.76, for a total of $11,497.20.

III.

We turn next to the objection of Lincoln on Locust and Kimball to the $300 hourly rate of Watson and Teitelman. "Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." Maldonado, 256 F.3d at 184.  The party seeking fees has the burden of establishing that the requested hourly rate is reasonable.  Id. (citing Washington v. Phila. Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996)).  The court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Id.  As noted, intervenors have presented detailed invoices received from their attorneys, Watson and Teitelman, showing an hourly rate of $300. Affidavits from the attorneys or any other evidence of a reasonable rate for their time have not been submitted.  However, viewing the complexity of the case and the work product of the attorneys, including Teitelman's participation at a hearing on the emergency motion and the compressed time frame for this matter, we find the hourly rate of $300 of both Watson and Teitelman to be fair and reasonable.  See, e.g., Mantz v. Steven Singer Jewelers, 100 F. App'x 78, 81 (3d Cir. 2004); Bell v. United Princeton Props., Inc., 884 F.2d 713, 719 (3d Cir. 1989).

In accordance with the foregoing, intervenors' reasonable costs and fees will be reduced to $12,000 for

Teitelman and $11,497.20 for Watson and his associates, for a total of $23,497.20.